1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   RODERICK L. MITCHELL,

11            Petitioner,            No. 2:04-cv-0556 LKK JFM (HC)

12       vs.

13   TERESA SCHWARTZ, Warden,
     et al.,                         FINDINGS AND RECOMMENDATIONS
14
              Respondents.
15   _____/

16            Petitioner is a state prisoner proceeding pro se with an application for a writ of

17   habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges his 2000 conviction on

18   charges of unlawful sexual intercourse with a minor in violation of California Penal Code §

19   261.5, assault with the intent to commit oral copulation in violation of California Penal Code §

20   220, and sexual penetration with a foreign object with a person under eighteen years old, in

21   violation of California Penal Code § 289(a)(1), and the sentence of twelve years and eight

22   months imposed thereon.

23   /////

24   /////

25   /////

26   /////

                                    1

## FACTS[1]

In October 1998, the victim, Jessica, who was 15 years old, was placed in the Hope for You group home because she violated juvenile probation.  [Petitioner], who turned 30 in January 1999, was a counselor at the group home, beginning in December 1998.

### December 22, 1998

The events of December 22, 1998, formed the basis for counts one and two of the information.  [Petitioner] was found not guilty of counts one and two; however, the testimony concerning what happened that day is presented for context in discussing the issues on appeal.

Jessica testified she went with [petitioner] and Linda, also a group home resident, to a shopping center.  On the way home, they stopped at an apartment complex where Linda's boyfriend lived so Linda could drop off a gift.  While she went in, [petitioner] and Jessica waited in the car in the dark parking lot.  [Petitioner] began kissing Jessica, then put his hand up her skirt and digitally penetrated her vagina.  Linda came out of the apartment building and asked if she could stay a little longer.  [Petitioner] told her she could and, after she went back in, he moved the car to a different location in the parking lot.  He reclined the passenger seat, again digitally penetrated Jessica's vagina, took her panties off, put on a condom, and engaged in sexual intercourse with Jessica.

### January 2, 1999

The events of January 2, 1999, formed the basis for counts three through five of the information.  [Petitioner] was found not guilty of those counts.

[Petitioner], Jessica, and Linda again went to the apartment complex where Linda's boyfriend lived on January 2, 1999, after the girls spent the afternoon at Scandia, an amusement complex.  While Linda went in to take some pictures to her boyfriend, [petitioner] kissed Jessica and digitally penetrated her vagina.  He reclined the seat, put on a condom, turned Jessica around on his knees, and engaged in sexual intercourse, entering the vagina from behind.

/////

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in <u>People v. Mitchell</u>, No. C037233 (Sept. 16, 2002), a copy of which is attached as Exhibit D to Respondents' Answer to Petition for Writ of Habeas Corpus, filed August 23, 2004.

*Group Home Incidents*

The events forming the basis for counts six through eight, of which [petitioner] was convicted, and count nine, of which [petitioner] was found not guilty, occurred at the group home after Jessica's sixteenth birthday, which was January 23, 1999. After ten o'clock one evening, after the other girls had gone to bed, Jessica was in the staff office sitting on a couch with [petitioner]. The lights were off. [Petitioner] stood Jessica up and turned her back towards him, then digitally penetrated her vagina. He asked her to go get a condom, which she did, retrieving a condom from her purse. After some difficulty obtaining an erection and the interruption of a knock at the door, [petitioner] had Jessica go get another condom. When she returned, he put the condom on and they engaged in sexual intercourse.

On February 16, 1999, the girls, except Jessica, were in their rooms at 10:00 p.m. Jessica was in the kitchen getting a drink of water. [Petitioner] came into the kitchen, turned Jessica around with her back against the refrigerator, and digitally penetrated her vagina. He picked her up and walked her over to a wall by the living room, inserting and withdrawing his fingers into and from her vagina until it began to hurt her. [Petitioner] picked up Jessica and took her into the den. He sat her on the end of a chair, and again inserted and withdrew his fingers into and from her vagina. This time he pushed harder, causing her so much pain that she cried. Despite her pleas for him to stop, he continued. After several minutes, [petitioner] pulled his penis out of his clothing and pushed her head down. Jessica closed her mouth, tried to pull her head up, and moved her head from side to side to avoid orally copulating him. [Petitioner], laughing, pushed his penis up toward her mouth, but Jessica, who was still crying, turned her head so that it hit her cheek. After several more minutes of this, [petitioner] allowed Jessica to leave.

The next day, Jessica continued to experience pain in her vagina and told one of the counselors she needed to go to the doctor. When taken there, she told the physician she was experiencing vaginal pain but said the pain was from leaving a tampon in too long instead of telling the doctor the pain was caused by [petitioner]'s assault. On February 18, 1999, Jessica told another counselor and the program administrator about the sexual incidents with [petitioner]. She showed the administrator a bruise on her knee she received when, during the second incident in the car, she knelt on a seatbelt. She also showed him a condom wrapper from the encounter in the staff office.

On February 24, 1999, Jessica was still feeling pain in her vagina. A nurse practitioner did a pelvic examination and found an abrasion about two centimeters long on Jessica's labia minora. The injury was consistent with digital penetration.

1          *Defense*

2              [Petitioner] testified, denying any sexual contact with Jessica.
           He presented other witnesses to show inconsistencies in Jessica's
3          statements.  When Officer Terrence Brass interviewed Jessica, she
           told him all of the sexual contact was against her will.  She also
4          told James Ross, an investigator from the district attorney's office
           that [petitioner] forced her to engage in sexual intercourse with
5          him during the two incidents in the car.  The family practice doctor
           who examined Jessica on February 17, 1999, the day after the last
6          incident, did not observe an abrasion or any other source of
           Jessica's pain.

7

8    People v. Mitchell, slip op. at 2-6.

9                              ANALYSIS

10   I.  Standards for a Writ of Habeas Corpus

11             Federal habeas corpus relief is not available for any claim decided on the merits in

12   state court proceedings unless the state court's adjudication of the claim:

13             (1) resulted in a decision that was contrary to, or involved an
               unreasonable application of, clearly established Federal law, as
14             determined by the Supreme Court of the United States; or

15             (2) resulted in a decision that was based on an unreasonable
               determination of the facts in light of the evidence presented in the
16             State court proceeding.

17   28 U.S.C. § 2254(d).

18             Under section 2254(d)(1), a state court decision is "contrary to" clearly

19   established United States Supreme Court precedents if it applies a rule that contradicts the

20   governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially

21   indistinguishable from a decision of the  Supreme Court and nevertheless arrives at different

22   result.  Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406

23   (2000)).

24             Under the  "unreasonable application" clause of section 2254(d)(1), a federal

25   habeas court may grant the writ if the state court identifies the correct governing legal principle

26   from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the

1   prisoner's case.  Williams, 529 U.S. at 413.  A federal habeas court "may not issue the writ

2   simply because that court concludes in its independent judgment that the relevant state-court

3   decision applied clearly established federal law erroneously or incorrectly.  Rather, that

4   application must also be unreasonable."  Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75

5   (2003) (it is "not enough that a federal habeas court, in its independent review of the legal

6   question, is left with a 'firm conviction' that the state court was 'erroneous.'")

7           The court looks to the last reasoned state court decision as the basis for the state

8   court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  Where the state court

9   reaches a decision on the merits but provides no reasoning to support its conclusion, a federal

10  habeas court independently reviews the record to determine whether habeas corpus relief is

11  available under section 2254(d).  Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).

12  II.  Petitioner's Claims

13          Petitioner raises thirteen claims for relief in his petition, including three claims of

14  ineffective assistance of counsel, four claims of prosecutorial misconduct, one claim of trial court

15  error, two claims of instructional error, and three challenges to his sentence.[2]  Petitioner's claims

16  of ineffective assistance of counsel are the first three claims in the petition.  However, because

17  some of petitioner's claims of ineffective assistance of counsel arise from the events underlying

18  his claims of prosecutorial misconduct, the court will address the claims of prosecutorial

19  misconduct first.

20  /////

21  /////

22  _____

23          [2]  At page 6 of the petition, petitioner lists the following as Ground N:  "Sufficiency of
    evidence implicit in the duty of a reviewing court to determine" and he cites to pages viii through
24  x of an attached petition.  Petition for Writ of Habeas Corpus, filed March 19, 2004, at 6.  The
    cited pages contain legal standards for evaluating whether there has been a fundamental
25  miscarriage of justice, and an argument that the prosecutor committed misconduct during closing
    argument by expressing her opinion that petitioner was guilty.  The court finds that Ground N
26  does not state a claim for relief separate from the thirteen claims raised in the petition.

A.   <u>Prosecutorial Misconduct</u>

Petitioner raises four claims of prosecutorial misconduct.  In Claim IV, he alleges that the prosecution unlawfully suppressed exculpatory material in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  In Claim V, he alleges that the prosecution improperly introduced false testimony and allowed perjured testimony to stand uncorrected.  In Claim VI, he alleges that the prosecution knowingly allowed "government agents to tamper with evidence and give false testimony."  Petition at 5(C).  Finally, in Claim VII he alleges that the prosecution allowed the state's expert witness to give false testimony during both direct and cross-examination.  These claims were raised in a petition for writ of habeas corpus to the California Supreme Court which was denied in an order that contained no statement of reasons for the decision.  <u>See</u> Exs. G and H to Answer.

1.   <u>Suppression of Exculpatory Material</u>

Petitioner's first claim of prosecutorial misconduct is that the prosecution suppressed exculpatory evidence in violation of <u>Brady</u>, <u>supra</u>.  Specifically, during the trial testimony of Detective Flaa the detective read from a transcript of a videotape of an interview with the victim.  Petitioner claims that defense counsel had no knowledge the transcript would be admitted at trial and had no copy of either the videotape or the transcript.  Petitioner further alleges that the prosecutor stated on the record that she had told defense counsel prior to trial that the tape was inaudible and would not be offered in evidence and also stated, falsely, that the videotape and transcripts had been turned over to defense counsel.  Petitioner also claims that the prosecutor committed misconduct by offering evidence of a transcript of an interview with petitioner that occurred before trial, which had also not been turned over to defense counsel.  Respondent contends that this claim is foreclosed by the trial court's factual finding that the prosecution did turn over the videotapes and transcripts at issue.

During cross-examination of petitioner, the prosecutor began to question petitioner about a meeting he had with Detective Flaa on February 18, 1999.  Reporter's

1  Transcript on Appeal (RT) at 913.  Shortly after this line of questioning began, defense counsel

2  asked for a sidebar conference.  Id.  Thereafter, there was a lengthy exchange between the

3  prosecutor and defense counsel concerning two videotapes, including one of petitioner's meeting

4  with Detective Flaa, and transcripts of the contents of those videotapes in which defense counsel

5  represented that he had not received either transcript and that he was unaware that petitioner's

6  interview with the detective had been videotaped.  Id. at 913-921.  The prosecutor represented

7  that she had provided all of the discovery at issue to petitioner's prior counsel more than a year

8  before trial.  Id. at 914-17, 921.  At the conclusion of the discussion, the trial court found that the

9  videotapes and transcripts had been provided to petitioner's prior defense counsel by the district

10 attorney.  Id. at 921.

11        The trial court's factual finding is "presumed correct unless rebutted by clear and

12 convincing evidence or unless based on an unreasonable evidentiary foundation."  Gonzalez v.

13 Pliler, 341 F.3d 897, 903 (9th Cir. 2003) (citing 28 U.S.C. § 2254(d)(2) & 2254(e)(1) and Zichko

14 v. Idaho, 247 F.3d 1015, 1019 (9th Cir. 2001)).  In support of his contention that the trial court's

15 factual finding was wrong, petitioner submits five documents styled "Sacramento County District

16 Attorney Discovery Record" which catalogue documents produced to defense counsel on five

17 separate occasions between October 7, 1999 and June 13, 2000.  Exs. A-E to Appendix to

18 Petition, filed March 19, 2004.  There is no description of the documents produced on any of the

19 records, and none reflect production of a videotape.  Id.  Petitioner has presented no evidence that

20 these five documents reflect all of the discovery produced, and it appears they do not.  During the

21 hearing, the prosecutor represented that on February 17, 2000, she had "discovered a 50-page

22 MDIC transcript, and that's logged in our discovery notes."  RT at 917.  None of petitioner's

23 exhibits are dated February 17, 2000.

24        Petitioner has failed to rebut the trial court's factual finding that the material in

25 question was produced to petitioner's prior attorney.  The state court's rejection of this claim was

26 /////

7

neither contrary to nor an unreasonable application of applicable principles of clearly established

federal law.  Petitioner's fourth claim for relief should be denied.

        2.  <u>Introduction of False Testimony/Allowing Perjury to Stand Uncorrected</u>

        Petitioner's fifth claim is that the prosecution improperly introduced false

testimony and allowed perjured testimony to stand uncorrected.  His sixth claim is that the

prosecution  knowingly allowed "government agents to tamper with evidence and give false

testimony."  Petition at 5(C).  His seventh claim is that the prosecution allowed the state's expert

witness to give false testimony during both direct and cross-examination.

> The Supreme Court has long held that a conviction obtained using knowingly perjured testimony violates due process. <u>Mooney v. Holohan</u>, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 (1935). In <u>Napue v. Illinois</u>, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959), the Court made clear that this prohibition against the use of false testimony applies even when the testimony in question was relevant only to the witness's credibility. <u>Id</u>. at 269, 79 S.Ct. 1173. A claim under <u>Napue</u> will succeed when "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material." <u>Hayes v. Brown</u>, 399 F.3d 972, 984 (9th Cir.2005) (en banc) (internal quotation marks and alteration omitted).

<u>Jackson v. Brown</u>, 513 F.3d 1057, 1071 (9th Cir. 2008).

        In his fifth claim, petitioner alleges that the victim perjured herself numerous

times in her trial testimony, and that she admitted on cross-examination that she had lied so that

petitioner "would go to jail."  Petition at 24.  Petitioner has presented no evidence to support this

allegation.  The record reflects that petitioner's trial attorney cross-examined the victim

extensively concerning whether she had lied about the incidents and other matters prior to

testifying at trial.  However, the victim's testimony on cross-examination does not establish

either that her trial testimony was actually false or that the prosecution knew or should have

known that her testimony was false.[3]

---

      [3]  On redirect examination, the victim testified that her trial testimony was truthful.  RT at 582.

Petitioner also claims that the prosecution's witness, Terry L., testified falsely concerning what she had told Officer Flaa about the incident that she interrupted between petitioner and the victim.  Specifically, Officer Flaa's report indicated that Terry L. had reported that she had walked into petitioner's office, found him at the desk with all the lights off, and "thought [she] saw a girl in the room also, but . . . wasn't sure."  Ex. F to Petition.  At trial, Terry L. testified that she had not told Officer Flaa she thought she saw a girl in the room, but that she had told him she "heard somebody else in the room."  RT at 984.  At most, this testimony might constitute evidence of a prior inconsistent statement.  Petitioner has not presented any evidence that this testimony was false, or that the prosecution knew it was false.

In petitioner's sixth claim, he alleges that the prosecution knowingly allowed "government agents to tamper with evidence and give false testimony."  Petition at 5(C).  His seventh claim is that the prosecution allowed the state's expert witness to give false testimony during both direct and cross-examination.

Petitioner's sixth claim arises from the trial testimony of Detective Ross, Detective Flaa, and Officer Brass.  With respect to Detective Ross, petitioner points to his testimony that no other witnesses had been present during his interview with prosecution witness Olivia W., see RT at 744-45, while Olivia W. testified that another witness had been present when she arrived for the interview with Detective Ross and stayed in the room during the interview.  RT at 733-34. In fact, Detective Ross testified that he asked the other witness to leave after Olivia W. arrived and introductions were made.  RT at 772.  Petitioner also points to various statements by Olivia W. during cross-examination in which she denied making statements in Detective Ross' report that were attributed to her.  None of the testimony cited by petitioner supports a finding that Detective Ross tampered with evidence or gave false testimony.  Petitioner also cites testimony from Detective Flaa that police officers can, during interviews, sometimes hear things that aren't actually said and that police reports can be "inaccurate or incorrect in some fashion."  RT at 798.  Finally, petitioner cites testimony from Officer Brass that

9

1  he had attributed the word "consent" to the victim after she told him that she had feared for her

2  safety and then "did it or something to that extent."  See RT at 808.  None of this testimony

3  supports a finding that the police reports in this case were tampered with or false in any material

4  respect.

5            Finally, in his seventh claim petitioner alleges that prosecution expert witness

6  Nurse Practitioner Green gave false testimony concerning a physical examination of the victim.

7  See Petition at 42-45.  Petitioner has presented no evidence that any of the cited portions of

8  Nurse Practitioner Green's testimony, or any other portion of her testimony, was false.

9            The state court's rejection of these claims was neither contrary to nor an

10 unreasonable application of applicable principles of clearly established federal law.  Petitioner's

11 fifth, sixth and seventh claims for relief should be denied.

12       B.  Ineffective Assistance of Counsel

13            Petitioner argues that both his trial and appellate counsel provided constitutionally

14 ineffective assistance.  See Petition filed March 19, 2004 at 5(A) and 5(b).  These claims were

15 raised in a petition for writ of habeas corpus to the California Supreme Court which was denied

16 in an order that contained no statement of reasons for the decision.  See Exs. G and H to Answer.

17            The Sixth Amendment guarantees the effective assistance of counsel.  The United

18 States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in

19 Strickland v. Washington, 466 U.S. 668 (1984).  First, a petitioner must show that, considering

20 all the circumstances, counsel's performance fell below an objective standard of reasonableness.

21 Strickland, 466 U.S. at 688.  To this end, petitioner must identify the acts or omissions that are

22 alleged not to have been the result of reasonable professional judgment.  Id. at 690.  The federal

23 court must then determine whether in light of all the circumstances, the identified acts or

24 omissions were outside the wide range of professional competent assistance.  Id.  "We strongly

25 presume that counsel's conduct was within the wide range of reasonable assistance, and that he

26 /////

1   exercised acceptable professional judgment in all significant decisions made." <u>Hughes v. Borg</u>,

2   898 F.2d 695, 702 (9th Cir. 1990) (citing <u>Strickland</u>, 466 U.S. at 689).

3          Second, a petitioner must affirmatively prove prejudice.  <u>Strickland</u>, 466 U.S. at

4   693.  Prejudice is found where "there is a reasonable probability that, but for counsel's

5   unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.  A

6   reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Id.</u>;

7   <u>see</u> <u>also</u> <u>Williams v. Taylor</u>, 529 U.S. at 391-92; <u>Laboa v. Calderon</u>, 224 F.3d 972, 981 (9th Cir.

8   2000).  A reviewing court "need not determine whether counsel's performance was deficient

9   before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . .

10   If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . .

11   . that course should be followed." <u>Pizzuto v. Arave</u>, 280 F.3d 949, 955 (9th Cir. 2002) (quoting

12   <u>Strickland</u>, 466 U.S. at 697).

13          The <u>Strickland</u> standards apply to appellate counsel as well as trial counsel.  <u>Smith</u>

14   <u>v. Robbins</u>, 528 U.S. 259, 285 (2000); <u>Smith v. Murray</u>, 477 U.S. 527, 535-36 (1986); <u>Miller v.</u>

15   <u>Keeney</u>, 882 F.2d 1428, 1433 (9th Cir. 1989).  In order to demonstrate prejudice in this context,

16   petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on

17   appeal.  <u>Miller</u>, 882 F.2d at 1434 n.9.

18          1.  <u>Ineffective Assistance of Appellate Counsel</u>

19          Petitioner's first claim is that his appellate counsel was ineffective in failing to

20   raise on direct appeal the <u>Brady</u> claim raised as Claim IV in the instant petition, and in failing to

21   raise on direct appeal a claim that his trial counsel was ineffective in failing to object on

22   constitutional grounds to the exclusion of evidence of the victim's other sexual experiences

23          a.  <u>Failure to Object to Brady Violation</u>

24          For the reasons set forth in section II.A.1, <u>supra</u>, petitioner's <u>Brady</u> claim is

25   without merit.  <u>A fortiori</u>, petitioner was not prejudiced by appellate counsel's failure to raise the

26   claim on direct appeal.  The state court's rejection of this claim was neither contrary to nor an

1  unreasonable application of applicable principles of clearly established federal law.  This claim

2  should be denied.

3          b.  Failure to Raise Ineffective Assistance of Trial Counsel Claim

4          Petitioner also claims that his appellate counsel was ineffective in failing to raise a

5  claim that trial counsel had been ineffective in failing to preserve for appellate review a

6  constitutional challenge to the exclusion of evidence of the victim's sexual relationship with her

7  boyfriend.  On direct appeal, petitioner's appellate counsel raised both statutory and

8  constitutional challenges to the exclusion of such evidence.  Ex. A to Answer at 12-30.  Petitioner

9  claimed that the exclusion of such evidence "severely undercut" his defense, which was to

10  challenge the victim's credibility.  Id. at 13.  The state court of appeal rejected the constitutional

11  claim on the ground that it "was not preserved for appeal because [petitioner] did not make the

12  constitutional argument in the trial court."  Ex. D to Answer, People v. Mitchell, slip op. at 6.  The

13  state court of appeal also rejected petitioner's claim, raised for the first time in his reply brief, that

14  the failure to preserve the constitutional issues in the trial court was the result of ineffective

15  assistance of trial counsel.  Id. at 7.

16          A criminal defendant has the right, protected by the Sixth Amendment, to confront

17  witnesses and to present a defense.  See Woods v. State of Alaska, 957 F.2d 1544, 1549 (9th Cir.

18  1992).  "These rights encompass the rights to cross-examination, Davis v. Alaska, 415 U.S. 308,

19  315-16, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974), and to present relevant evidence, Michigan

20  v. Lucas, 500 U.S. 145, 111 S.Ct. 1743, 1746-47, 114 L.Ed.2d 205, 212 (1991)."  Id.  However,

21      [e]ven relevant evidence can be excluded in certain circumstances.
    The right to present relevant testimony "may, in appropriate cases,

22      bow to accommodate other legitimate interests in the criminal trial
    process." Chambers v. Mississippi, 410 U.S. 284, 295, 93 S.Ct.

23      1038, 1046, 35 L.Ed.2d 297 (1973). The Supreme Court has
    recognized that a state has a legitimate interest in protecting rape

24      victims against unwarranted invasions of privacy and harassment
    regarding their sexual conduct. Lucas, 500 U.S. at ----, 111 S.Ct. at

25      1146, 114 L.Ed.2d at 212. Also, "trial judges retain wide latitude
    insofar as the Confrontation Clause is concerned to impose

26      reasonable limits on ... cross-examination based on concerns about,

1         among other things, harassment, prejudice, confusion of the issues,
the witness' safety, or interrogation that is repetitive or only

2         marginally relevant." <u>Delaware v. Van Arsdall</u>, 475 U.S. 673, 679,
106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

3

4 <u>Id</u>. In determining whether a defendant's Sixth Amendment rights were violated by the exclusion

5 of evidence, the court "make[s] a two-part inquiry." <u>Id</u>. at 1550. First, the court looks at "whether

6 the excluded evidence is relevant" and, if it is, the court considers "whether other legitimate

7 interests outweighed [the defendant]'s interest in presenting the evidence." <u>Id</u>.

8         In rejecting petitioner's statutory challenge to the exclusion of this evidence, the

9 state court of appeal made the following relevant findings:

10         Here, after a hearing and argument, the trial court found lacking
the probative value of the evidence concerning Jessica's sexual

11         relationship with her boyfriend, especially to support the argument
she fabricated her accusations against [petitioner] using what she

12         had learned about sexual matters from her contemporaneous
relationship with her boyfriend. We agree that whatever probative

13         value this evidence may have had was minimal. During the hearing,
Jessica testified she had unprotected sexual intercourse with her

14         boyfriend. No further details concerning their sexual relationship
were elicited. Yet [petitioner] claims he could have used the

15         evidence to show she used what she learned from her experiences
with her boyfriend in fabricating accusations against [petitioner].

16         Since the only evidence concerning the sexual relationship with the
boyfriend is that they had unprotected sexual intercourse, there

17         appears to be little correlation with the allegations she made against
[petitioner] -- the use of condoms, different positions, digital

18         penetration, and other details.

19         The prejudicial effect, on the other hand, was much more
significant. The public policy of California, as reflected in

20         Evidence Code section 1103, subdivision (c), is not to allow a
defendant to put the victim on trial by presenting evidence of other

21         sexual conduct. Excluding evidence of other sexual conduct in
cases such as this in which the evidence is only minimally probative

22         with respect to credibility gives effect to the legislative intent to
limit public exposure of the victim's other sexual conduct.

23

24 Ex. D to Answer, <u>People v. Mitchell</u>, slip op. at 11-12. The state court of appeal's finding that

25 petitioner's proposed evidence was only "minimally probative" and of marginal relevance at best

26 is fully supported by the record, as is the court's determination that California's public policy

1   interests outweighed petitioner's interest in presenting this evidence.  There is no reasonable

2   probability that the outcome of petitioner's appeal would have been different had counsel raised a

3   claim that petitioner's trial counsel had been ineffective in failing to preserve the constitutional

4   claims for appellate review.

5          The state court's rejection of petitioner's claim of ineffective assistance of

6   appellate counsel was neither contrary to nor an unreasonable application of applicable principles

7   of clearly established federal law.  This claim should be denied.

8                          2.  Ineffective Assistance of Trial Counsel

9          Petitioner also raises two claims of ineffective assistance of trial counsel.  In Claim

10  II, petitioner claims that his trial counsel was ineffective in failing to preserve for appeal issues

11  related to the trial court's decision to exclude evidence of the victim's concurrent sexual

12  relationship with her boyfriend.  For the reasons set forth in section II.B.1.b, supra, there is no

13  reasonable probability that the outcome of petitioner's trial would have been different had trial

14  counsel preserved such issues for appeal.  The state court's rejection of this claim was neither

15  contrary to nor an unreasonable application of applicable principles of clearly established federal

16  law.  This claim should be denied.

17         In Claim III, petitioner contends that his trial counsel was ineffective in failing to

18  object to admission of the alleged Brady material that is the subject of petitioner's claim of

19  prosecutorial misconduct, supra.  Petitioner's claim that his trial counsel failed to object to

20  admission of this evidence is not supported by the record.  Moreover, for the reasons discussed in

21  section II.A.1, supra, petitioner's Brady claim is without merit.  A fortiori, his trial counsel was

22  not ineffective in connection with the admission of this material.  The state court's rejection of

23  this claim was neither contrary to nor an unreasonable application of applicable principles of

24  clearly established federal law.  This claim should be denied.

25  /////

26  /////

1      C.  Trial Court Error

2              Petitioner's eighth claim is that his constitutional rights were violated by the trial

3   court's decision to exclude his proposed evidence of the victim's contemporaneous relationship

4   with her boyfriend.  See Section II.B.1.b, supra.  For the reasons set forth in section II.B.1.b,

5   supra, exclusion of this evidence did not violate petitioner's constitutional rights.  The state

6   court's rejection of this claim was neither contrary to nor an unreasonable application of

7   applicable principles of clearly established federal law.  This claim should be denied.[4]

8      D.  Instructional Error

9              Petitioner raises two claims of instructional error.  In Claim IX, he contends that

10  the trial court erred in failing to instruct the jury sua sponte on the meaning of the term "material

11  part" as used in CALJIC No. 2.21.2, which was given as part of the overall charge to the jury.  In

12  Claim X, petitioner contends that the use of CALJIC No. 1.00 impermissibly reduced the

13  prosecution's burden of proof.  The last reasoned state court rejection of these claims is the

14  decision of the California Court of Appeal for the Third Appellate District on petitioner's direct

15  appeal.  See Ex. D to Answer, People v. Mitchell, slip op. at 12-14.

16      1.  CALJIC No. 2.21.2

17              The state court of appeal rejected petitioner's challenge to the failure to define

18  "material part" as follows:

19              [Petitioner] argues that the term "material part" as used in
        CALJIC 2.21.2 was a technical term that needed to be defined sua
20      sponte by the court.  The argument is without merit.

21              The trial court instructed the jury on the issue of witness
        credibility using the language of CALJIC No. 2.21.2, as follows:
22      "A witness who is willfully false in one *material part* of his or her
        testimony, is to be distrusted in others.  [¶]  You may reject the
23      whole testimony of a witness who willfully has testified falsely to a
        *material* point unless from all the evidence you believe the

24

_____

25          [4] Respondents contend, inter alia, that this claim is procedurally barred due to petitioner's
    failure to raise a constitutional objection at trial.  It is apparent to this court that the claim is
26  without merit.  Accordingly, this court will not address the procedural default defense.

probability of truth favors his or her testimony in other particulars." (Italics added.)

"[A]s used in [CALJIC No. 2.21.2], 'material' carries its ordinary meaning of 'substantial, essential, relevant or pertinent.' The instruction . . . tells the jury it can distrust a witness who is willfully false in giving relevant or pertinent testimony." (*People v. Wade*, *supra*, 39 Cal.App.4th at pp. 1495-1496.) Thus, contrary to [petitioner]'s contention, "when . . . a phrase 'is commonly understood by those familiar with the English language and is not used in a technical sense peculiar to the law, the court is not required to give an instruction as to its meaning in the absence of a request.' [Citation.]" (*People v. Rowland* (1992) 4 Cal.4th 238, 270-271.)

[Petitioner]'s reliance on *People v. Pierce* (1967) 66 Cal.2d. 53 is misplaced. *Pierce* "held the test for materiality as an element of the crime of perjury is 'whether the statement could probably have influenced the outcome of the proceedings . . . .' [¶] However, read in the context of CALJIC No. 2.21.2, it is clear that 'material' is not used in the sense described in *Pierce*, i.e., as probably influencing the outcome. It would make no sense to tell the jury that it could distrust a false witness only if the falsity influenced the outcome of the case." (*People v. Wade*, *supra*, 39 Cal.App.4th at p. 1496.) Neither *Pierce* nor the other cases cited by [petitioner] require a court to characterize the phrase "material part" as a technical term requiring further definition in all cases where that phrase is used. Because [petitioner] did not request the court to instruct the jury on the definition of "material part" there was no error in the instruction as given.

Id. at 13-14.

A challenge to jury instructions does not generally state a federal constitutional claim. See Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985), cert. denied, 478 U.S. 1021 (1986) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). Habeas corpus is unavailable for alleged error in the interpretation or application of state law. Middleton, 768 F.2d at 1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986). However, a "claim of error based upon a right not specifically guaranteed by the Constitution may nonetheless form a ground for federal habeas corpus relief where its impact so infects the entire trial that the resulting conviction violates the defendant's right to due process." Hines v. Enomoto, 658 F.2d

667, 673 (9th Cir. 1981) (citing Quigg v. Crist, 616 F.2d 1107 (9th Cir. 1980), cert. denied, 449 U.S. 922 (1980)); see also Lisenba v. California, 314 U.S. 219, 236 (1941).

In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment." Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988), cert. denied, 488 U.S. 861 (1988) (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)).  To prevail, petitioner must demonstrate that an erroneous instruction "'so infected the entire trial that the resulting conviction violates due process.'" Estelle v. McGuire, 502 U.S. 62, 72 (1991) (quoting Cupp, 414 U.S. at 147).  In making its determination, this court must evaluate the challenged jury instructions "'in the context of the overall charge to the jury as a component of the entire trial process.'" Prantil, 843 F.2d at 817 (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984), cert. denied, 469 U.S. 838 (1984)).  Further, in reviewing an allegedly ambiguous instruction, the court "must inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." Estelle, 502 U.S. at 72 (quoting Boyde v. California, 494 U.S. 370, 380 (1990)).  Petitioner's burden is "especially heavy" when the court fails to give an instruction.  Henderson v. Kibbe, 431 U.S. 145, 155 (1977).

To support this claim, petitioner relies on one federal case that involves the term "material" as an element of a criminal offense.  See Petition at 55, citing U.S. v. Gaudin, 515 U.S. 506 (1995) (requiring the question of the "materiality" of a false statement to be tendered to the jury in criminal prosecution for violation of 18 U.S.C. § 1001).[5]  Petitioner's challenge here is to an alleged failure to further define the term "material" in an instruction permitting the jury to disregard testimony from a witness.  The precedent cited by petitioner has no bearing on the claim at bar.  Moreover, the trial court's failure to define this term in no way rendered petitioner's trial fundamentally unfair.  The state court's rejection of this claim was neither contrary to nor an

---

[5]  Petitioner's reliance on state law in this context is misplaced.  As noted above, federal habeas corpus relief is unavailable for errors in the interpretation and application of state law.

unreasonable application of applicable principles of clearly established federal law.  This claim should be denied.

### 2. CALJIC No. 1.00

The state court of appeal rejected petitioner's challenge to the use of CALJIC No. 1.00 as follows:

> [Petitioner] contends the court's use of CALJIC No. 1.00 to instruct the jury impermissibly lessened the prosecutor's burden of proving his guilt beyond a reasonable doubt and created confusion among the jurors.  We disagree.
>
> CALJIC No. 1.00 advised the jury they "must not be biased against a defendant because he has been arrested for this offense, charged with a crime or brought to trial.  [¶]  None of these circumstances is evidence of guilt, and you must not infer or assume from any or all of them that a defendant is more likely to be guilty than not guilty."
>
> We have held CALJIC No. 1.00's use of the phrase "more likely to be guilty than not guilty" does not lessen the prosecutor's burden of proof.  (*People v. Wade* (1995) 39 Cal.App.4th 1487, 1491.)  "The jury would not have construed the instruction in the manner suggested by defendant.  A reasonable juror would understand this instruction as an advisement to disregard the facts that defendant had been arrested, charged, and brought to trial, and to presume the defendant innocent."  (*Ibid.*)
>
> [Petitioner]'s reliance on *People v. Dail* (1943) 22 Cal.2d 642 is misplaced.  "Unlike the *Dail* case, . . . the jurors were not misled by the giving of one erroneous and one correct instruction covering the same subject.  They were clearly and correctly instructed according to the law applicable to . . . distinct issues . . . ."  (*People v. Davenport* (1985) 41 Cal.3d 247, 272.)  CALJIC No. 1.00 does not unfairly mislead the jury by impermissibly lessening the prosecutor's burden to prove guilt beyond a reasonable doubt.

Ex. D to Answer, <u>People v. Mitchell</u>, slip op. at 12-13.

The standards relevant to this claim are taken from a decision of the United States Court of Appeals for the Ninth Circuit in <u>Mendez v. Knowles</u>, 556 F.3d 757, 768 (9th Cir. 2009)

> The Due Process Clause of the Fourteenth Amendment requires that the prosecution prove every element of a criminal offense beyond a reasonable doubt. <u>Gibson [v. Ortiz]</u>, 387 F.3d [812] at 820 [(9th Cir. 2004)] (citing <u>In re Winship</u>, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). "Any jury instruction that 'reduce[s]

the level of proof necessary for the Government to carry its burden ... is plainly inconsistent with the constitutionally rooted presumption of innocence.' " Id. (quoting Cool v. United States, 409 U.S. 100, 104, 93 S.Ct. 354, 34 L.Ed.2d 335 (1972)). When a jury instruction is erroneous because it misdescribes the burden of proof, it "vitiates all the jury's findings," and no verdict within the meaning of the Sixth Amendment is rendered. Sullivan v. Louisiana, 508 U.S. 275, 281, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). "Where such an error exists, it is considered structural and thus is not subject to harmless error review." Gibson, 387 F.3d at 820 (citing Sullivan, 508 U.S. at 280-82, 113 S.Ct. 2078).

Conversely, if the instructions in question are considered "ambiguous," then they will only violate due process if "a reasonable likelihood exists that the jury has applied the challenged instruction[s] in a manner that violates the Constitution." Id. at 820-21(citing Estelle v. McGuire, 502 U.S. 62, 72, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)); see also Mejia v. Garcia, 534 F.3d 1036, 1041-42 (9th Cir.2008). Unless there is a likelihood that the jury applied the instructions in a way that lessens the prosecution's burden of proof, we review instructional error under the harmless error standard. See Hedgpeth v. Pulido, --- U.S. ----, 129 S.Ct. 530, 532, --- L.Ed.2d ---- (2008). All challenged instructions must be considered in light of all of the jury instructions and the trial record as a whole. Cupp v. Naughten, 414 U.S. 141, 146-47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973).

Mendez v. Knowles, 556 F.3d at 768.

After review of the record, this court finds no reasonable likelihood that the jury applied CALJIC No. 1.00 to reduce the prosecution's burden of proof.  The state court's rejection of this claim was neither contrary to nor an unreasonable application of applicable principles of clearly established federal law.  This claim should be denied.

E. Sentencing Error

Petitioner's final three claims allege errors in his sentence.  As noted above, petitioner was convicted on three counts.  He was sentenced to "the middle term of four years for assault with intent to commit oral copulation,; a consecutive eight months (one-third of the middle term) for unlawful sexual intercourse with a minor; and a full, consecutive, upper term of eight years for sexual penetration by force."  Ex. D to Answer, People v. Mitchell, slip op. at 2. Petitioner's eleventh claim is that his sentence must be vacated because the trial court erred in

applying "the mandatory full consecutive sentencing." Petition at 5(F). Petitioner's twelfth claim is that the sentence must be vacated because the trial court, rather than the jury, made factual determinations relied on at sentencing. Finally, petitioner's thirteenth claim is that his sentence is cruel and unusual punishment in violation of the Eighth Amendment.

Petitioner's eleventh claim is based solely on state law. <u>See</u> Attachment to Petition at 60-61. Federal habeas corpus relief is unavailable for alleged errors in the application of state sentencing law. <u>See</u> <u>Miller v. Vasquez</u>, 868 F.2d 1116, 1118-19 (9th Cir. 1989). Petitioner's eleventh claim for relief is not cognizable in this action.

The last reasoned rejection of petitioner's twelfth claim is the decision of the state court of appeal on petitioner's direct appeal, which rejected the claim as follows:

> [Petitioner] contends the consecutive sentence was improperly imposed because the trial court and not the jury made the determination that the sexual offenses occurred on separate occasions. The contention is without merit.
>
> [Petitioner] bases this argument on *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] (*Apprendi*). *Apprendi* addressed "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." (*Id*. at p. 469.)
>
> . . . .
>
> *Apprendi* does not support [petitioner]'s position. The sentence imposed by the trial court did not exceed the maximum terms for the crimes found by the jury. The court found the offenses were perpetrated on separate occasions, which was a sentencing factor used in determining the sentence, within the statutory maximum, to be imposed. Thus, the holding in *Apprendi* that a sentencing enhancement that increases the sentence beyond the statutory maximum must be decided by a jury beyond a reasonable doubt

/////

/////

/////

/////

1     does not apply here.  The trial court's application of consecutive
      sentencing did not violate [petitioner]'s due process rights.[6]

2

3   Ex. D to Answer, <u>People v. Mitchell</u>, slip op. at 19-21.

4     California law requires imposition of

5     [a] full, separate and consecutive term . . for each violation of an
      offense specified in subdivision (e) [including the crimes of which
6     petitioner was convicted] if the crimes involve separate victims or
      involve the same victim on separate occasions.

7

8        In determining whether crimes against a single victim were
      committed on separate occasions under this subdivision, the court
9     shall consider whether, between the commission of one sex crime
      and another, the defendant had a reasonable opportunity to reflect
10    on his or her actions and nevertheless resumed sexually assaultive
      behavior.  Neither the duration of time between crimes, nor whether
11    or not the defendant lost or abandoned his or her opportunity to
      attack, shall be, in and of itself, determinative on the issue of
12    whether the crimes in question occurred on separate occasions.

13  Cal. Penal Code § 667.6(d).  At sentencing, the trial court found that each of the three offenses

14  were committed on separate occasions.  <u>See</u> RT at 1238-39.  The court therefore ordered that the

15  sentences imposed for each count be served consecutively.  <u>Id</u>. at 1239.

16      "The rule in *Apprendi* only applies where a defendant is sentenced above the

17  statutory maximum sentence for an offense.  <u>United States v. Sanchez</u>, 269 F.3d 1250, 1268 (11th

18  Cir.2001) (en banc).  *Apprendi* does not prohibit a sentencing court from imposing consecutive

19  sentences on multiple counts of conviction as long as each is within the applicable statutory

20  maximum."  <u>U.S. v. Davis</u>, 329 F.3d 1250, 1254 (9th Cir. 2003).  None of the sentences imposed

21  on each count individually exceeded the statutory maximum and there was no violation of

22

23      [6] [Petitioner] asserts that, because three California cases refer to consecutive sentences as
    enhancements [citations omitted], *Apprendi* requires that the jury determine whether facts exist
    to support consecutive sentencing.  This argument fails because, for the purpose of considering
24  constitutional due process claims, *Apprendi*, not the California cases, defines "enhancement."
    The California cases do not purport to define "enhancement" for the purpose of applying due
25  process analysis; instead, they discuss only the dual use of facts under sentencing statutes.  As
    noted in the text above, consecutive sentencing does not fall within the definition of
26  "enhancement" under *Apprendi.*

1   Apprendi in the trial court's decision to run the sentences consecutively.  The state court's

2   rejection of this claim was neither contrary to nor an unreasonable application of applicable

3   principles of clearly established federal law.  This claim should be denied.

4         The state court of appeal found that petitioner's claim that his sentence violated the

5   Eighth Amendment was waived because he did not raise the claim at sentencing and because the

6   claim was without merit.  Ex. D to Answer, People v. Mitchell, slip op. at 21-24.  Respondents

7   contend that the claim is procedurally barred and, in any event, that petitioner's sentence does not

8   constitute cruel and unusual punishment.

9         Only extreme sentences that are grossly disproportionate to the crime violate the

10  Eighth Amendment. United States v. Bland, 961 F.2d 123, 129 (9th Cir.1992) (quoting Harmelin

11  v. Michigan, 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)).  Petitioner's sentence is not

12  grossly disproportionate to the crimes of which he was convicted.  The state court's rejection of

13  this claim was neither contrary to nor an unreasonable application of applicable principles of

14  clearly established federal law.  This claim should be denied.

15        For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that

16  petitioner's application for a writ of habeas corpus be denied.

17        These findings and recommendations are submitted to the United States District

18  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

19  days after being served with these findings and recommendations, any party may file written

20  objections with the court and serve a copy on all parties.  Such a document should be captioned

21  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

22  objections shall be filed and served within fourteen days after service of the objections.  The

23  /////

24  /////

25  /////

26  /////

parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 17, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

12
mitc0556.157